

## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**December 12, 2014**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

**Time: 11:17 AM**

| | | |
|---|---|---|
| Employee: Sean Vance East | ) | Docket No. 2014-01-0009 |
| | ) | |
| Employer: Heritage Hosiery Mill | ) | State File No. 71607-2014 |

In accordance with Rule 0800-02-22-.02(6), please find attached the Workers' Compensation Appeals Board's Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims in the referenced case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims was sent to the following recipients by the following methods of service on this the 12th day of December, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Sean Vance East, Employee | | | | | X | seanlottie@comcast.net |
| Charles Poss, Employer's Attorney | | | | | X | charlie.poss@leitnerfirm.com |
| Thomas L. Wyatt, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov



**TENNESSEE DIVISION OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

FILED

December 12, 2014

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 11:17 AM

| | | |
|---|---|---|
| Employee: Sean Vance East | ) | Docket No. 2014-01-0009 |
| | ) | |
| Employer: Heritage Hosiery Mill | ) | State File No. 71607-2014 |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

---

**Affirmed and Remanded – Filed December 12, 2014**

---

## ORDER AND OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal involves an employee who claims to have suffered a work-related neck and left arm injury on September 4, 2014 while lifting boxes of yarn at Employer's hosiery mill. Employer provided a panel of physicians on September 16, 2014, and Employee has been receiving authorized medical care for the alleged injury. On September 29, 2014 Employer filed a C-23 Notice of Denial of Claim for Compensation, stating the claim was under investigation to address causation. On the same date Employee filed a Petition for Benefit Determination seeking temporary disability benefits from September 4, 2014, which was the last day Employee worked. Following an expedited hearing, the trial court entered an order for medical benefits but denied temporary disability benefits. The Employee has appealed. Having carefully reviewed the record, we affirm the decision of the Court of Workers' Compensation Claims.

1

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, joined; Judge Timothy W. Conner not participating.

Sean Vance East, East Ridge, Tennessee, employee-appellant, *pro se*

Charles W. Poss, Chattanooga, Tennessee, for the employer-appellant, Heritage Hosiery Mill

## Factual and Procedural Background

This interlocutory appeal follows a November 13, 2014 expedited hearing and the issuance of an Expedited Hearing Order for Medical Benefits on November 24, 2014. The November 24, 2014 order awarded medical benefits and denied temporary disability benefits. The employee, Sean East ("Employee"), filed an Expedited Hearing Notice of Appeal on November 25, 2014. On December 9, 2014 the record was filed with the Workers' Compensation Appeals Board. No record of any testimony taken during the expedited hearing was provided to the Appeals Board, nor was a statement of the evidence provided. The November 24, 2014 order states that the witnesses at the expedited hearing were Employee and Employer's Plant Manager. The factual background included below is taken from the exhibits introduced at the hearing, which included a transcript of a September 16, 2014 recorded statement of Employee and the affidavit of Employer's Plant Manager.

Employee is a 45 year old resident of East Ridge, Tennessee. He was hired by Heritage Hosiery Mill ("Employer") as a Maintenance/Material Handler August 22, 2014, and he began work with Employer three days later on Monday August 25, 2014. He alleges that on September 4, 2014, which was the last date that Employee worked for Employer, he injured his neck and left arm while lifting boxes of yarn in the course and scope of his employment. He asserts that on the afternoon of September 4, 2014, he told his supervisor, Employer's Plant Manager, that his arm was sore following some lifting of heavy boxes of yarn. Employer admits there was a conversation between Employee and its Plant Manager September 4, 2014, but Employer denies that Employee mentioned anything about a work injury occurring until Employee called the Plant Manager on September 8, 2014. There is no issue in this case as to the timeliness of the notice of the alleged injury.

Employer provided a panel of physicians September 16, 2014, from which Employee selected Physician's Care, a walk-in clinic near his home. At his initial visit to the clinic, Employee was diagnosed with a cervical strain with paresthesia to the left arm. Employee returned to the clinic September 23, 2014 for re-evaluation and stated that he

2

had not improved and that his condition had worsened. He complained of abdominal pain and expressed concern that he had damaged a hernia repair due to lifting heavy boxes. He returned to the clinic the following day and reported that the medicines he had been prescribed were not helping. The report of the September 24, 2014 visit states that "the tingling is driving him crazy in that hand." Employee was referred to an orthopedist and he came under the care of Dr. Peter Lund who was selected from a panel of physicians. Dr. Lund continues to provide authorized treatment for Employee's alleged work injury.

Employer has not paid temporary disability benefits based upon its assertion that Employee voluntarily quit his job September 4, 2014. Employee asserts that he did not voluntarily quit his job and that he was told to go home during the discussion he had with the Plant Manager on the afternoon of September 4, 2014. This discussion focused on the lifting Employee had been performing and whether the lifting involved in Employee's work duties might cause harm to his surgically repaired hernias. Employee had two hernias that were surgically repaired prior to the start of Employee's work with Employer. The first hernia surgery was performed in 2012. In the spring of 2014, Employee had another hernia for which he underwent a surgical repair June 9, 2014.

A transcript of a recorded statement that Employee gave September 16, 2014 was admitted into evidence and includes the following concerning the September 4, 2014 discussion Employee had with the Plant Manager:

GH: And who's your current employer?

[Employee]: Well, I'm unemployed. Ah, I actually, ah, don't work for them anymore. Ah, I had left them on September the 4th. I was, ah, basically, when I was hired in, I was told that, you know, ah . . . .

. . . .

GH: Okay. And so, you reported this to who, on the 4th?

[Employee]: I actually... I actually... when I reported it to... to [the Plant Manager], that I said, "Listen, you know, I can't be, ah, I can't be lifting this kind of stuff on my own. I'll have to have some help." And he said, "Well, unfortunately, the job calls for you to have to do it." And I'm like, "Well, what do you want me to do? I mean, can I not get some help?" He said, "Well, no, not really." I said... he said... he said, "Well, I don't want you to hurt yourself." And I said, "Well, what are you saying?" He says...

3

I said, "Are you saying I need to go home?" He said, "Well, it probably would be better." So, I clocked out.

GH: So, now, did you… did you actually tell him that you thought you had hurt your arm at that point?

[Employee]: I told him my arm was sore, yes.

. . . .

GH: Okay. Okay. Now, let's go back, ah, when you said that as of 9/4, you no longer work for the employer. Now, oh, what is your understanding, ah, voluntarily quit or terminated?

[Employee]: Well, I really don't know. He just told me he felt like he needed me to, you know, probably needed me to leave, because he didn't want me to hurt myself. And I'm like, "Well, I don't want to hurt myself." You know, I just, ah, so, he just basically asked me to, you know, clock out. And I said, "Well, do you need my timecard and my badge?" And he said, "Well, no, you can just bring that back on Thursday." And, ah, which when I… I guess, when I picked up my check, ah, there on last Thursday.

. . . .

GH: So, he asked you to leave or you told him…

[Employee]: I mean, he was actually, basically wanting me not to continue on.

. . . .

[Employee]: So, I guess… I don't know that you could actually call that being fired. He didn't really flat out say, "You are fired…"

GH: Mm hmm.

[Employee]: …or nothing like that.

GH: And you didn't flat out say you quit?

[Employee]: No, Ma'am.

The affidavit of the Plant Manager states that Employee worked for Employer for nine days before voluntarily resigning September 4, 2014. The affidavit states that

4

Employee came to the Plant Manager's office September 4, 2014 and said he did not realize the amount of heavy lifting that would be involved with his job. According to the affidavit, Employee told the Plant Manager for the first time that he had a hernia that was surgically repaired and that Employee was concerned that the heavy lifting involved with the job might cause some problems in the future with his hernia. The following is included in the affidavit concerning discussions about a work injury and Employee's continued employment:

> I asked [Employee] if he had been injured in any way while working for [Employer] and he said he had not. He said that he felt he should resign from the job so that he did not cause an injury to his hernia in the future.

> I accepted [Employee's] resignation when he informed me that he was voluntarily resigning on September 4, 2014. I did not hear from [Employee] again until September 8, 2014. On that date, he called me and told me that he had hurt his shoulder or arm when he worked for [Employer]. This was the first time that [Employee] had ever mentioned to me that he had been injured on the job. He specifically denied that he had been injured when I asked him about this on September 4, 2014, the day he resigned out of his concern for reinjuring his hernia in the future if he continued work.

Employee filed a Petition for Benefit Determination September 29, 2014. Following unsuccessful mediation efforts, Employee filed a Request for Expedited Hearing October 24, 2014, and he marked the form to request that the evidentiary hearing be conducted by telephone. A Dispute Certification Notice was issued October 28, 2014. On October 30, 2014 Employee filed a second Request for Expedited Hearing and again marked the form to request the evidentiary hearing be conducted by telephone. The expedited hearing was conducted by telephone November 24, 2014. Employee was not represented by counsel at the hearing. Seven exhibits were introduced without objection, including the certified records of Physician's Care, the affidavit of the Plant Manager, and the transcript of Employee's September 16, 2014 recorded statement.

## Standard of Review

The standard of review to be applied in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking

review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
(E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014).

In applying the above standard, courts have construed substantial and material evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993) (quoting *Southern Railway Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(2), the Board will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis
### A. Record on Appeal

It is well-settled in Tennessee that the appealing party has the burden to ensure that an adequate record is prepared on appeal. As the Supreme Court's Special Workers' Compensation Appeals Panel explained in *Vulcan Materials Co. v. Watson*, No. M2003-00975-WC-R3-CV, 2004 Tenn. LEXIS 451 (Tenn. Workers' Comp. Panel May 19, 2004):

> The appellant has the duty of preparing a record that conveys a fair, accurate and complete account of the proceedings in the trial court with respect to the issues on appeal. Tenn. R. App. P. 24(b). We are provided with only the trial court's findings of facts and conclusions of law rendered from the bench and the exhibits introduced at the trial of this cause, which include three doctor's depositions. We do not have a record of the lay testimony presented to the trial court. In the absence of an adequate record on appeal, this Court must presume the trial court's rulings were supported by sufficient evidence. *Manufacturers Consol. Service v. Rodell*, 42 S.W.3d 846, 865 (Tenn. App. 2000).

*Id.* at *6-7.

6

Including a transcript or statement of the evidence as part of the record on appeal promotes meaningful appellate review and, in turn, public confidence in the integrity and fairness of the process. As one court has explained, "[f]ull appellate consideration of a trial court's determination . . . is part of the process designed to achieve an accurate and just decision . . . ." *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 Tenn. App. LEXIS 546, at *12 (Tenn. Ct. App. Aug. 16, 2000). Indeed, "[w]ithout a transcript or a statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision." *Britt v. Chambers*, No. W2006-00061-COA-R3-CV, 2007 Tenn. App. LEXIS 38, at *8 (Tenn. Ct. App. Jan. 25, 2007). Accordingly, "it is essential that the appellate court be provided with a transcript of the trial proceedings or a statement of the evidence . . . ." *Id.* at *7. *See also Whitesell v. Moore*, No. M2011-02745-COA-R3-CV, 2012 Tenn. App. LEXIS 894, at *7 (Tenn. Ct. App. Dec. 21, 2012) ("Without a transcript or a statement of the evidence, we cannot review the evidence . . . ."); *Estate of Cockrill*, No. M2010-00663-COA-R3-CV, 2010 Tenn. App. LEXIS 754, at *11-12 (Tenn. Ct. App. Dec. 2, 2010) ("In cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court."); *Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1996) ("In the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorably to the appellee."). In short, "[a]n incomplete appellate record is fatal to an appeal," *Piper v. Piper*, No. M2005-02541-COA-R3-CV, 2007 Tenn. App. LEXIS 70, at *11 (Tenn. Ct. App. Feb. 1, 2007), and a reviewing court "must conclusively presume that the evidence presented supported the facts as found by the trial court." *Whitesell*, 2012 Tenn. App. LEXIS 894, at *10.

In the present case, as in *Vulcan Materials*, the Appeals Board was provided with no record of any testimony taken during the expedited hearing. Moreover, no statement of the evidence was offered by the appellant. Under the circumstances, the Appeals Board will presume that the trial court's rulings were supported by sufficient evidence.

## B. Burden of Proof and Causation

For injury dates on or after July 1, 2014, "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2014). An employee has the burden of proving each element of his or her workers' compensation claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2014); *Elmore v. Travelers Ins. Co.*, 824 S.W.2d 541, 543 (Tenn. 1992). This includes the burden of proving that an alleged "injury by accident" arose "primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014).

In the present case, the trial court made the factual findings set out below that are presumed to be correct as provided by Tennessee Code Annotated section 50-6-239(c)(7), unless the preponderance of the evidence is otherwise:

- Employee sustained an injury to his neck and left upper extremity on September 4, 2014 while lifting boxes of yarn in the course and scope of his employment;
- Employee voluntarily resigned his employment with Employer on September 4, 2014 because he was concerned that he might reinjure surgically-repaired hernias while performing the lifting required to execute the duties assigned by Employer; and
- Employee has not been totally disabled as a result of the neck and left upper extremity injury he sustained September 4, 2014 in the course and scope of his employment with Employer.

As noted above, the Appeals Board presumes that the trial court's findings and its conclusions are correct, and without a transcript or statement of the evidence, we must conclusively presume that the evidence presented supported the facts as found by the trial court.[1]

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's findings that Employee sustained an injury by accident occurring in the course and scope of his employment; that Employee is entitled to the medical benefits specified in the trial court's November 24, 2014 order; and that Employee is not entitled to an award of temporary disability benefits. Further, we find that the trial court's decision does not prejudice the rights of the parties or otherwise violate the standards set forth in Tennessee Code Annotated section 50-6-217(a)(2). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

---

[1] In two position statements filed on December 1 and December 2, 2014, Employee appears to challenge the accuracy of the transcript of his recorded statement and the accuracy of the affidavit of the Plant Manager. There is nothing in the record to indicate Employee objected to the introduction of these exhibits. Because there is no transcript of the expedited hearing, it is unknown whether these issues were raised in the trial court. Accordingly, we decline to address them. *See Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) ("One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal.").